1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10  METROPCS PENNSYLVANIA,
     LLC,

11                        Plaintiff,

12         v.

13  AIMEN ARRAK, et al.,

14                        Defendants.

15

CASE NO. C15-0769JLR

ORDER GRANTING
PLAINTIFF'S MOTION FOR A
PRELIMINARY INJUNCTION

16

## I.   INTRODUCTION

17         Before the court is Plaintiff MetroPCS Pennsylvania, LLC's ("MetroPCS") motion

18  for a preliminary injunction preventing Defendants Aimen Arrak, Adel Alameri, and City

19  Wireless, Inc. ("CWI") from violating the terms of a dealer agreement between

20  MetroPCS and CWI.  (Mot. (Dkt. # 4).)  The court has considered the motion,[1] the

21  _____

22         [1] Defendants received service of MetroPCS's motion and complaint for injunctive relief
     on May 21, 2015, two days after MetroPCS filed the instant motion and six days after MetroPCS

ORDER- 1

1  balance of the record, and the applicable law.  Being fully advised,[2] the court GRANTS

2  MetroPCS's motion for a preliminary injunction as described below.

3  ## II.   BACKGROUND

4    This is a suit for injunctive relief arising out of a dealer agreement between

5  MetroPCS and CWI.  MetroPCS is a wireless telephone carrier that focuses on offering

6  pay-in-advance or "prepaid" plans and relies on its dealers to market and sell its products

7  and provide service to its customers.  (Compl. (Dkt. # 1) ¶¶ 7-8.)  On or about February

8  13, 2014, CWI and MetroPCS executed an Exclusive Indirect Dealer Agreement ("the

9  Dealer Agreement").  Mr. Arrack, who is Vice President of CWI, signed the Dealer

10 Agreement on behalf of CWI.[3]  (*Id.* ¶¶ 3, 9.)

11   Pursuant to the Dealer Agreement, CWI agreed not to solicit or divert MetroPCS

12 customers during the term of the Dealer Agreement and for six months after its

13 termination ("the non-solicitation provision"):

14     All customers are owned by MetroPCS and not by Dealer.  During the term
   of this Agreement and for a period of six (6) months after termination of
15     this Agreement . . . , Dealer, its principals, owners, partners, members,
   shareholders, officers, directors, employees, agents ("Affiliated Persons")
16     and any entity in which an Affiliated Person owns an interest and/or any

17

18   filed its complaint.  (*See* Dkt. ## 8-10; Compl. (Dkt. # 1); Mot.)  Defendants have not, however,
   responded to MetroPCS's motion or entered an appearance in this matter.  (*See* Dkt.)  Although
19   Local Rule LCR 7(b)(2) provides that failure to file papers in opposition to a motion "may be
   considered by the court as an admission that the motion has merit," Local Rules W.D. Wash.
   LCR 7(b)(2), the court nevertheless proceeds to the merits of MetroPCS's motion.

20
     [2] No party has requested oral argument, and the court finds oral argument to be
21 unnecessary.

22   [3] Mr. Alameri is President of CWI (Compl. ¶ 4) and owns the premises on which CWI
   operates the store at issue here (Richards Decl. (Dkt. # 7) ¶ 3).

1    successor entity to Dealer ("Affiliated Entity") shall not at any time (i)
     request any MetroPCS customer to curtail or cancel its business with
2    MetroPCS, or (ii) otherwise solicit, divert or attempt to divert any such
     MetroPCS customer from patronizing MetroPCS.

3
(Kipling Decl. (Dkt. # 5) ¶ 4, Ex. 3 ("Agreement")[4] ¶ 2.4.)  CWI further agreed not to
4
compete with MetroPCS within a two-mile radius of CWI's MetroPCS storefronts during
5
the same period ("the non-compete provision"):
6
7            Dealer covenants and agrees that during the Term of this Agreement and
             for a period of six (6) months following any termination or expiration of
8            this Agreement, Dealers shall not, and will cause its Affiliated Persons and
             Affiliated Entities, not to directly or indirectly (including by licensing)
9            engage or participate in, or acquire, manage, operate, control or participate
             in the management, operation or control of, either alone or jointly, any
10           entity that engages in the sale, resale, or distribution of any wireless
             telephone or wireless internet data service . . . within an two (2) mile radius
11           of Dealer's MetroPCS Storefront Locations.  If Dealer breaches this
             warranty and covenant, then, in addition to any other legal or equitable
12           remedy that MetroPCS may have, the post-termination period of this
             warranty covenant will be extended for one (1) day for each day during
             which the Dealer's breach was ongoing.
13
(*Id.* ¶ 16.7.)[5]  MetroPCS asserts that such provisions are critical to its business because it
14
invests substantial resources in training and supporting dealers and is vulnerable to
15
having its customers poached while it attempts to reestablish a presence in a particular
16
area after its relationship with a dealer ends.  (*See* Bromberg Decl. (Dkt. # 6) ¶¶ 3-7, 11-
17
12; Mot. at 6.)
18

19    _____

20    [4] Because the Dealer Agreement "itself is confidential," MetroPCS has filed a redacted
      version that includes "only the provisions that pertain to this motion."  (Kipling Decl. ¶ 4, Ex. 3.)
21
      [5] In addition, the Dealer Agreement selects King County, Washington, as the proper
22    venue for disputes between MetroPCS and CWI and provides that Washington law will govern
      such disputes.  (*Id.* ¶ 21.1.)

1        In late 2014, CWI breached the Dealer Agreement.  (Compl. ¶ 10.)  As a result of

2  CWI's breach, MetroPCS terminated the Dealer Agreement effective February 20, 2015.

3  (*Id.* ¶ 11.)  On March 30, 2015, however, MetroPCS learned that one of CWI's former

4  MetroPCS stores "was still open" and "selling competing wireless . . . services for Boost

5  Mobile," a competitor of MetroPCS.  (*Id.* ¶ 15; *see also* Bromberg Decl. ¶ 9, Ex. A.)

6  MetroPCS sent a cease-and-desist letter to Defendants on April 9, 2015, warning that

7  Defendants were violating the Dealer Agreement's non-compete and non-solicitation

8  provisions, and that MetroPCS reserved the right to seek immediate relief from the court.

9  (Kipling Decl. ¶ 2, Ex. 1.)  The record does not indicate whether Defendants responded to

10  MetroPCS's letter.

11        MetroPCS filed this action for injunctive relief on May 15, 2015 (Compl. at 1),

12  and filed the instant motion four days later (Mot. at 1).  On May 21, 2015, MetroPCS

13  served both its complaint and this motion on all three Defendants.  (Dkt. ## 8-10; Kipling

14  Decl. ¶ 3.)  MetroPCS's motion asks the court to preliminarily enjoin Defendants from

15  violating the terms of the non-compete and non-solicitation provisions of the Dealer

16  Agreement.  (*See* Mot. at 13.)  The court now considers MetroPCS's motion.

17                **III.    DISCUSSION**

18        Federal Rule of Civil Procedure 65(a) authorizes the court to issue a preliminary

19  injunction.  *See* Fed. R. Civ. P. 65(a).  To be entitled to a preliminary injunction,

20  MetroPCS must show:  (1) a likelihood of success on the merits; (2) that irreparable harm

21  is likely, not just possible, if the injunction is not granted; (3) that the balance of equities

22  tips in its favor; and (4) that an injunction is in the public interest.  *See Alliance for the*

1   *Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).  MetroPCS has met its

2   burden with respect to each of these elements.[6]

3        First, MetroPCS has demonstrated that it is likely to succeed on the merits of its

4   claim for a permanent injunction preventing Defendants from violating the terms of the

5   non-compete and non-solicitation provisions of the Dealer Agreement.  *See id.*

6   Washington law enforces such provisions so long as they are reasonably necessary to

7   protect the business or good will of the franchisor, "giving special consideration to time

8   and area restrictions."  *Armstrong v. Taco Time Int'l, Inc.*, 635 P.2d 1114, 1117-18

9   (Wash. Ct. App. 1981); *HomeTask Handyman Servs., Inc. v. Cooper*, No. C07-1282RSL,

10  2007 WL 3228459, at *3 (W.D. Wash. Oct. 30, 2007).  MetroPCS has provided sufficient

11  evidence to show that the Dealer Agreement's non-compete and non-solicitation

12  provisions are likely enforceable against Defendants.  Both provisions operate for only

13  six months after termination of the Dealer Agreement (Agreement ¶¶ 2.4, 16.7), and the

14  non-compete provision operates only within a two-mile radius of Defendants' former

15  MetroPCS storefronts (*id.* ¶ 16.7).  *See Armstrong*, 635 P.2d at 1118-19 (enforcing a two-

16  and-a-half-year restriction within the market area of other franchisees); *HomeTask*, 2007

17  WL 3228459, at *3-4 (upholding a two-year, 25-mile-radius restriction).  MetroPCS has

18

19

20        [6] The court acknowledges that an alternate formulation of the preliminary injunction test
    remains viable in the Ninth Circuit.  Under that formulation, if irreparable harm is likely, an
    injunction is in the public interest, and the balance of equities "tips sharply in the plaintiff's
21  favor," the plaintiff need only raise "serious questions going to the merits" to be entitled to
    injunctive relief.  *Alliance for the Wild Rockies*, 632 F.3d at 1134-35.  Because the court finds
    that MetroPCS has shown a likelihood of success on the merits, the court need not address
22  whether MetroPCS has satisfied the alternate formulation of the preliminary injunction test.

ORDER- 5

1   also shown a likelihood that these restrictions are reasonably necessary to protect its

2   business, particularly in terms of maintaining its customer base and preventing

3   appropriation of and damage to its goodwill.  (*See* Bromberg Decl. ¶¶ 3-7, 11-12);

4   *HomeTask*, 2007 WL 3228459, at *4.  Lastly, MetroPCS has shown that Defendants are

5   likely violating these restrictions.  (Bromberg Decl. ¶ 9, Ex. A.)

6        Second, Metro PCS has demonstrated that irreparable harm is likely absent an

7   injunction.  *See Alliance for the Wild Rockies*, 632 F.3d at 1134-35.  In particular,

8   MetroPCS has shown that the nature of its business makes it vulnerable to losing

9   customers after its relationship with a dealer ends.  (*See* Bromberg Decl. ¶¶ 3-7, 11-12);

10  *Rent-A-Center, Inc. v. Canyon T.V. & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir.

11  1991) (observing that damage to goodwill qualifies as irreparable harm).  It has also

12  shown that Defendants are likely exploiting that vulnerability by offering competing

13  products and services at their former MetroPCS storefront in violation of the Dealer

14  Agreement's non-compete and non-solicitation provisions.  (*See id.*; *see also id.* ¶ 9, Ex.

15  A); *HomeTask*, 2007 WL 3228459, at *4 ("Allowing [defendant] to exploit the

16  company's good will and her former customer base would place HomeTask at a distinct

17  disadvantage in attempting to re-franchise the area or otherwise recapture the market.").

18       Furthermore, MetroPCS has shown both that the balance of equities tips in its

19  favor and that an injunction is in the public interest.  *See Alliance for the Wild Rockies*,

20  632 F.3d at 1134-35.  With respect to the former consideration, MetroPCS has

21  demonstrated that is at risk of losing customers and sustaining damage to its goodwill

22  absent an injunction (*see* Bromberg Decl. ¶¶ 3-7, 9, 11-12), whereas an injunction

1    threatens Defendants only with the inability to compete with MetroPCS within a small

2    area for a few months (*see* Agreement ¶¶ 2.4, 16.7; Mot. at 13).  *See L.A. Mem'l*

3    *Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980)

4    (explaining that this prong requires the court to "balance the interests of all parties and

5    weigh the damage to each"); *Farmer Brothers Co. v. Albrecht*, No. 2:11-CV-01371-

6    PMP-CWH, 2011 WL 4736858, at *3 (D. Nev. Oct. 6, 2011) ("Although an injunction

7    would limit [defendant's] employment activities, the injunction would last less than one

8    year and would restrict [defendant's] activities in the Las Vegas area only.  By contrast,

9    the hardship to [plaintiff] is significant because [defendant] could divert customers and

10   damage goodwill.").

11        Regarding the latter consideration, the limited scope of the non-compete and non-

12   solicitation provisions makes an injunction unlikely to have a significant adverse impact

13   on nonparties.  (*See* Agreement ¶¶ 2.4, 16.7); *Sammartano v. First Judicial Dist. Ct.*, 303

14   F.3d 959, 974 (9th Cir. 2002) (noting that the public interest prong addresses impacts on

15   nonparties rather than parties).  On the other hand, the public interest benefits from the

16   enforcement of business contracts, including reasonably necessary non-compete and non-

17   solicitation agreements.  *MWI Veterinary Supply Co. v. Wotton*, 896 F. Supp. 2d 905, 914

18   (D. Idaho 2012); *see Perry v. Moran*, 748 P.2d 224, 229 (Wash. 1987) (discussing the

19   benefits of upholding reasonable non-compete provisions).  Accordingly, the court

20   concludes that MetroPCS has demonstrated its entitlement to a preliminary injunction

21   preventing Defendants from violating the Dealer Agreement's non-compete and non-

22   solicitation provisions.

ORDER- 7

Finally, the court finds that MetroPCS need not provide a bond under Federal Rule Civil Procedure 65(c).  Despite Rule 65(c)'s seemingly mandatory language regarding injunction bonds, the Ninth Circuit has held that district courts have "discretion as to the amount of security required, if any."  *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).  In particular, a district court "may dispense with the filing of a bond when it concludes that there is no realistic likelihood of harm to the defendant from enjoining his or her conduct."  *Id.*  Given the narrow scope of the restrictive provisions at issue here (*see* Agreement ¶¶ 2.4, 16.7), MetroPCS's strong showing of a likelihood of success (*see* Mot. at 4-9; Bromberg Decl. ¶ 9), and Defendants' failure to respond, the court concludes that there is no realistic likelihood that an injunction will harm Defendants.  *See Jorgensen*, 320 F.3d at 919; *United Food & Commercial Workers Local 99 v. Brewer*, 817 F. Supp. 2d 1118, 1128 (D. Ariz. 2011); *Ticketmaster L.L.C. v. RMG Techs.*, 507 F. Supp. 2d 1096, 1116 (C.D. Cal. 2007) ("A bond may not be required . . . where the movant has demonstrated a likelihood of success.").

## IV.    CONCLUSION

For the reasons discussed above, the court GRANTS MetroPCS's motion for a preliminary injunction (Dkt. # 4).  The court therefore ENJOINS Defendants from violating the terms of the Dealer Agreement's non-compete and non-solicitation provisions, including by:

(a) Engaging or participating in, or acquiring, managing, operating, controlling, or participating in the management of, any entity that engages in the business of the sale, resale, or distribution of any wireless telephone or wireless internet

ORDER- 8

1            data service within a two-mile radius of CWI's former MetroPCS store

2            locations;

3      (b) Selling, reselling, or distributing any wireless telephone or wireless internet

4            data service within a two-mile radius of CWI's former MetroPCS store

5            locations;

6      (c) Requesting any MetroPCS customer to curtail or cancel its business with

7            MetroPCS; or

8      (d) Otherwise soliciting, diverting, or attempting to divert any MetroPCS customer

9            from patronizing MetroPCS.

10       This injunction shall be immediately effective and extend for a minimum of 142

11 days[7] or until trial on this matter, whichever comes first.[8]

12       Dated this 24th day of June, 2015.

13

14

15                        JAMES L. ROBART

16                        United States District Judge

17

---

18      [7] When on March 30, 2015, MetroPCS discovered that Defendants were offering competing goods and services from their former MetroPCS store, 142 days remained in the

19 period of restriction under the Dealer Agreement's non-compete and non-solicitation provisions. (*See* Bromberg Decl. ¶¶ 8-9; Agreement ¶¶ 2.4, 16.7; Kipling Decl. ¶ 2, Ex. 2.)  The Dealer

20 Agreement provides that every day in violation results in another day of restriction.  (Agreement ¶ 16.7.)  Thus, a shortfall of 142 days mandates at least an additional 142 days of compliance.

21      [8] The court declines to rule on MetroPCS's request for attorney fees and costs at this time.  (*See* Mot. at 13.)  MetroPCS may file a motion for attorney fees and costs following final

22 disposition of this matter.