1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

15

| | |
|---|---|
| METROPCS PENNSYLVANIA, LLC, | CASE NO. C15-0769JLR |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR A FINAL INJUNCTION |
| v. | |
| AIMEN ARRAK, et al., | |
| Defendants. | |

## I.   INTRODUCTION

16

17

18

19

20

21

22

This matter comes before the court on Plaintiff MetroPCS Pennsylvania, LLC's

("MetroPCS") motion for a final injunction preventing Defendants Adel Alameri, Aimen

Arrak, and City Wireless, Inc. ("CWI") from violating the terms of a dealer agreement

between MetroPCS and CWI.  (*See* Mot. (Dkt. # 23); *see also* Mot. for Prelim. Inj. (Dkt.

# 4); 6/24/15 Order (Dkt. # 12).)  Having considered the motion, the balance of the

1  record, and the relevant law, and being fully advised, the court GRANTS MetroPCS's

2  motion for a permanent injunction, as described below.

3  ## II.   BACKGROUND

4        This is a suit for injunctive relief arising out of a dealer agreement between

5  MetroPCS and CWI.  MetroPCS is a wireless telephone carrier that focuses on offering

6  pay-in-advance or "prepaid" plans and relies on its dealers to market and sell its products

7  and provide service to its customers.  (Compl. (Dkt. # 1) ¶¶ 7-8.)  On or about February

8  13, 2014, CWI and MetroPCS executed an Exclusive Indirect Dealer Agreement ("the

9  Dealer Agreement").  Mr. Arrack, who was Vice President of CWI, signed the Dealer

10  Agreement on behalf of CWI.[1]  (*Id.* ¶¶ 3, 9; *see also* Mot. for Contempt (Dkt. # 13) at 2

11  n.1.)

12        Pursuant to the Dealer Agreement, CWI agreed not to solicit or divert MetroPCS

13  customers during the term of the Dealer Agreement and for six months after its

14  termination ("the non-solicitation provision"):

15      All customers are owned by MetroPCS and not by Dealer.  During the term
    of this Agreement and for a period of six (6) months after termination of

16      this Agreement . . . , Dealer, its principals, owners, partners, members,
    shareholders, officers, directors, employees, agents ("Affiliated Persons")

17      and any entity in which an Affiliated Person owns an interest and/or any
    successor entity to Dealer ("Affiliated Entity") shall not at any time (i)

18      request any MetroPCS customer to curtail or cancel its business with
    MetroPCS, or (ii) otherwise solicit, divert or attempt to divert any such

19      MetroPCS customer from patronizing MetroPCS.

20

21  --------

22     [1] Mr. Alameri is President of CWI (Compl. ¶ 4) and owns the premises on which CWI
operates the store at issue here (Richards Decl. (Dkt. # 7) ¶ 3).

ORDER- 2

1  (1st Kipling Decl. (Dkt. # 5) ¶ 4, Ex. 3 ("Agreement")[2] ¶ 2.4.)  CWI further agreed not to

2  compete with MetroPCS within a two-mile radius of CWI's MetroPCS storefronts during

3  the same period ("the non-compete provision"):

> Dealer covenants and agrees that during the Term of this Agreement and
> for a period of six (6) months following any termination or expiration of
> this Agreement, Dealers shall not, and will cause its Affiliated Persons and
> Affiliated Entities, not to directly or indirectly (including by licensing)
> engage or participate in, or acquire, manage, operate, control or participate
> in the management, operation or control of, either alone or jointly, any
> entity that engages in the sale, resale, or distribution of any wireless
> telephone or wireless internet data service . . . within an two (2) mile radius
> of Dealer's MetroPCS Storefront Locations.  If Dealer breaches this
> warranty and covenant, then, in addition to any other legal or equitable
> remedy that MetroPCS may have, the post-termination period of this
> warranty covenant will be extended for one (1) day for each day during
> which the Dealer's breach was ongoing.

11  (*Id.* ¶ 16.7.)[3]  MetroPCS asserts that such provisions are critical to its business because it

12  invests substantial resources in training and supporting dealers and is vulnerable to

13  having its customers poached while it attempts to reestablish a presence in a particular

14  area after its relationship with a dealer ends.  (*See* Bromberg Decl. (Dkt. # 6) ¶¶ 3-7, 11-

15  12; Mot. for Prelim. Inj. at 6.)

16        In late 2014, CWI breached the Dealer Agreement.  (Compl. ¶ 10.)  As a result of

17  CWI's breach, MetroPCS terminated the Dealer Agreement effective February 20, 2015.

---

[2] Because the Dealer Agreement "itself is confidential," MetroPCS has filed a redacted version that includes "only the provisions that pertain to this motion."  (1st Kipling Decl. ¶ 4, Ex. 3.)

[3] In addition, the Dealer Agreement selects King County, Washington, as the proper venue for disputes between MetroPCS and CWI and provides that Washington law will govern such disputes.  (Agreement ¶ 21.1.)

ORDER- 3

1  (*Id.* ¶ 11.)  On March 30, 2015, however, MetroPCS learned that one of CWI's former

2  MetroPCS stores "was still open" and "selling competing wireless . . . services for Boost

3  Mobile," a competitor of MetroPCS.  (*Id.* ¶ 15; *see also* Bromberg Decl. ¶ 9, Ex. A.)

4  MetroPCS sent a cease-and-desist letter to Defendants on April 9, 2015, warning that

5  Defendants were violating the Dealer Agreement's non-compete and non-solicitation

6  provisions, and that MetroPCS reserved the right to seek immediate relief from the court.

7  (1st Kipling Decl. ¶ 2, Ex. 1.)  The record does not indicate whether Defendants

8  responded to MetroPCS's letter.

9          MetroPCS filed this lawsuit on May 15, 2015, seeking permanent injunctive relief.

10  (Compl. at 1.)  Four days later, MetroPCS moved for a preliminary injunction to stop

11  Defendants from violating the terms of the non-compete and non-solicitation provisions.

12  (*See* Mot. for Prelim. Inj. at 1, 13.)  The court granted that motion, finding that MetroPCS

13  satisfied all four elements of the traditional preliminary injunction test.  (*See* 6/24/15

14  Order at 4-7 (citing Fed. R. Civ. P. 65(a); *Alliance for the Wild Rockies v. Cottrell*, 632

15  F.3d 1127, 1134-35 (9th Cir. 2011)); *see also id.* at 5 n.6 (noting that an alternate

16  formulation of this test remains viable in the Ninth Circuit).)  Because 142 days remained

17  in the period of restriction under the non-compete and non-solicitation provisions at the

18  time MetroPCS discovered Defendants' violations, the court stated that the preliminary

19  injunction would "be effective immediately and extend for a minimum of 142 or until

20  trial in this matter, whichever comes first."  (*Id.* at 9 & n.7 (noting that the Dealer

21  Agreement requires an additional day of compliance for each day in violation) (citing

22  Agreement ¶ 16.7).)

1    The court entered its order granting a preliminary injunction on June 24, 2015 (*id.*

2  at 1), and within the next week MetroPCS served Defendants with a copy of the order

3  (*see* Drobny Decl. (Dkt. # 14) ¶ 3).  Defendants, however, did not modify their behavior.

4  Over the next two-and-a-half months, MetroPCS confirmed on several occasions that

5  Defendants have continued to sell competing products and services in violation of the

6  Dealer Agreement and the court's preliminary injunction.  (*See* Mot. for Contempt at 3-4;

7  Bernal Decl. (Dkt. # 16) ¶¶ 1-7; Marica Decl. (Dkt. # 17) ¶¶ 1-4.)[4]

8    MetroPCS responded to Defendants' non-compliance with a motion for an order

9  to show cause why Defendants CWI and Adel Alameri should not be held in contempt.[5]

10  (*See* Mot. for Contempt.)  MetroPCS also filed a motion to extend the term of the

11  preliminary injunction to account for Defendants continuing violations of the Dealer

---

13  [4] Indeed, Defendants have gone to considerable lengths to continue selling competing
products and services.  For instance, Defendants have continued to advertise and sell the wireless
products and services of Boost Mobile, one of MetroPCS's competitors, despite Boost Mobile
14  having revoked Defendants' authorization to do so.  (*See* 2d Kipling Decl. (Dkt. # 15) ¶¶ 2-4, Ex.
A; Marica Decl. ¶ 3; Bernal Decl. ¶ 4.)  Defendants have persisted in this conduct even after they
15  lost the ability to independently activate wireless devices on Boost Mobile's network.  In early
September, a private investigator hired by MetroPCS entered the CWI store and asked about
16  purchasing a prepaid phone.  (Bernal Decl. ¶¶ 4-5.)  A CWI employee first offered a phone and
the prepaid wireless services of other MetroPCS competitors (WalMart Family Plan and AT&T
Go), but the investigator asked for a Boost Mobile prepaid phone.  (*See* Bernal Decl. ¶ 5; Mot.
17  for Contempt at 5-6.)  The employee then sold a Boost Mobile phone and plan to the
investigator.  (Bernal Decl. ¶ 6.)  Shortly thereafter, the investigator discovered that the phone
18  would not connect with the Boost Mobile network, and so he returned to the store.  (*Id.* ¶ 7.)  The
CWI employee attempted to fix this issue in the store but without success.  (*Id.*)  The employee
19  asked a colleague to walk down the street to another store, "Touch of Perfume/Top Wireless."
(*Id.*)  The colleague returned with a Boost Mobile card that the CWI employee used to activate
20  the investigator's phone on the Boost Mobile wireless network.  (*Id.*)

21  [5] According to MetroPCS, Defendant Aimen Arrak is no longer affiliated with CWI and
has no role in the ongoing business that violates the Dealer Agreement and the preliminary
injunction.  (Mot. for Contempt at 2 n.1.)  MetroPCS therefore did not request that Mr. Arrak be
22  held in contempt (*id.*), and the court did not hold Mr. Arrak in contempt (*see* Dkt. # 22).

1    Agreement.  (*See* Mot. to Modify Inj. (Dkt. # 18).)  The court granted MetroPCS's

2    motion for an order to show cause and ordered CWI and Mr. Alameri to appear in court

3    on October 15, 2015, at 10:00 a.m. to show cause why they should not be held in

4    contempt.  (10/7/15 Order (Dkt. # 20) at 1; *see id.* at 2 (finding that if the court does not

5    enforce its injunction, MetroPCS "will suffer irreparable harm . . . , including continued

6    loss of [MetroPCS's] goodwill and erosion of its customer relationships").)  MetroPCS

7    served CWI and Mr. Alameri with a copy of the court's order on October 8, 2015 (*see*

8    Cert. of Service (Dkt. # 21)), but neither CWI nor Mr. Alameri appeared (*see* Dkt. # 22).

9    At the hearing, the court held CWI and Mr. Alameri in civil contempt, denied the motion

10   to modify the injunction, and directed MetroPCS to instead file a motion for a final

11   injunction.  (*See id.*)

12          On October 19, 2015, MetroPCS filed the present motion for a final injunction.

13   (Mot. at 1.)  MetroPCS asks the court to enter an injunction restraining Defendants from

14   violating the Dealer Agreement's non-compete and non-solicitation provisions for an

15   additional 142 days.  (*See id.* at 2-6.)  MetroPCS argues that this result is appropriate

16   because (1) 142 days of compliance remained when the court entered its preliminary

17   injunction, and (2) MetroPCS has shown that since that time Defendants have continued

18   to violate the Dealer Agreement and the court's preliminary injunction.  (*See id.* at 2-4.)

19   MetroPCS's motion is now before the court.

20                           **III.    DISCUSSION**

21          To be entitled to a permanent or final injunction, a plaintiff must demonstrate (1)

22   actual success on the merits; (2) that it has suffered an irreparable injury; (3) that

1   remedies available at law are inadequate; (4) that the balance of hardships justifies a

2   remedy in equity; and (5) that the public interest would not be disserved by a permanent

3   injunction. *Indep. Training & Apprenticeship Program v. Cal. Dep't of Indus. Relations*,

4   730 F.3d 1024, 1032 (9th Cir. 2013); *see also Amoco Prod. Co. v. Village of Gambell,*

5   *AK*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is

6   essentially the same as for a permanent injunction with the exception that the plaintiff

7   must show a likelihood of success on the merits rather than actual success."). MetroPCS

8   meets each of these elements.

9          First, the court concludes that the Dealer Agreement's non-compete and non-

10  solicitation provisions are enforceable and Defendants are violating them. Washington

11  law enforces such provisions so long as they are reasonably necessary to protect the

12  business or goodwill of the franchisor, "giving special consideration to time and area

13  restrictions." *Armstrong v. Taco Time Int'l, Inc.*, 635 P.2d 1114, 1117-18 (Wash. Ct.

14  App. 1981); *HomeTask Handyman Servs., Inc. v. Cooper*, No. C07-1282RSL, 2007 WL

15  3228459, at *3 (W.D. Wash. Oct. 30, 2007). Both provisions at issue here operate for

16  only six months after termination of the Dealer Agreement (Agreement ¶¶ 2.4, 16.7), and

17  the non-compete provision operates only within a two-mile radius of Defendants' former

18  MetroPCS storefronts (*id.* ¶ 16.7). *See Armstrong*, 635 P.2d at 1118-19 (enforcing a two-

19  and-a-half-year restriction within the market area of other franchisees); *HomeTask*, 2007

20  WL 3228459, at *3-4 (upholding a two-year, 25-mile-radius restriction). These

21  provisions are reasonably necessary to protect MetroPCS's business, particularly in terms

22  of maintaining its customer base and preventing appropriation of and damage to its

ORDER- 7

1  goodwill.  (*See* Bromberg Decl. ¶¶ 3-7, 11-12); *HomeTask*, 2007 WL 3228459, at *4.  By

2  continuing to sell competing products and services, Defendants are violating these

3  provisions.  (Bromberg Decl. ¶ 9, Ex. A; Bernal Decl. ¶¶ 1-7; Marica Decl. ¶¶ 1-4;

4  10/7/15 Order at 2.)

5      Second, the court concludes that MetroPCS has suffered irreparable harm and

6  remedies at law would be inadequate.  MetroPCS has shown that the nature of its

7  business makes it vulnerable to losing customers after its relationship with a dealer ends.

8  (*See* Bromberg Decl. ¶¶ 3-7, 11-12); *Rent-A-Center, Inc. v. Canyon T.V. & Appliance*

9  *Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (observing that damage to goodwill

10 qualifies as irreparable harm).  It has also shown that Defendants are exploiting that

11 vulnerability by offering competing products and services at their former MetroPCS

12 storefront in violation of the Dealer Agreement.  (*See* Bromberg Decl. ¶¶ 3-7, 11-12.; *see*

13 *also id.* ¶ 9, Ex. A; Bernal Decl. ¶¶ 1-7; Marica Decl. ¶¶ 1-4; 10/7/15 Order at 2);

14 *HomeTask*, 2007 WL 3228459, at *4 ("Allowing [defendant] to exploit the company's

15 good will [sic] and her former customer base would place HomeTask at a distinct

16 disadvantage in attempting to re-franchise the area or otherwise recapture the market.").

17 Such losses would be difficult, if not impossible, to remedy with an award of damages.

18 *See Apple, Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943, 949-50 (N.D. Cal. 2009).  The

19 more appropriate remedy is to enjoin Defendants from competing with MetroPCS and

20 diverting its customers, as provided in the Dealer Agreement.

21      Third, the balance of hardships justifies a final injunction.  MetroPCS remains at

22 risk of losing customers and sustaining damage to its goodwill absent an injunction (*see*

Bromberg Decl. ¶¶ 3-7, 9, 11-12), whereas an injunction threatens Defendants only with the inability to compete with MetroPCS within a small area for a few months (*see* Agreement ¶¶ 2.4, 16.7; Mot. at 13). *See L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980) (explaining that this prong requires the court to "balance the interests of all parties and weigh the damage to each"); *Farmer Brothers Co. v. Albrecht*, No. 2:11-CV-01371-PMP-CWH, 2011 WL 4736858, at *3 (D. Nev. Oct. 6, 2011) ("Although an injunction would limit [the defendant's] employment activities, the injunction would last less than one year and would restrict [the defendant's] activities in the Las Vegas area only. By contrast, the hardship to [the plaintiff] is significant because [the defendant] could divert customers and damage goodwill.").

Finally, the public interest would not be disserved by a final injunction. The limited scope of the restrictions at issue makes an injunction unlikely to have a significant adverse impact on nonparties. (*See* Agreement ¶¶ 2.4, 16.7); *Sammartano v. First Judicial Dist. Ct.*, 303 F.3d 959, 974 (9th Cir. 2002) (noting that the public interest prong addresses impacts on nonparties rather than parties). On the other hand, the public interest benefits from the enforcement of business contracts, including reasonably necessary non-compete agreements. *MWI Veterinary Supply Co. v. Wotton*, 896 F. Supp. 2d 905, 914 (D. Idaho 2012); *see Perry v. Moran*, 748 P.2d 224, 229 (Wash. 1987) (discussing the benefits of upholding reasonable non-compete provisions). Accordingly, the court concludes that MetroPCS has demonstrated it is entitled to a final injunction providing 142 days of compliance with the Dealer Agreement.

## IV.   CONCLUSION

For the reasons discussed above, the court GRANTS MetroPCS's motion for a final injunction (Dkt. # 23).  The court ENJOINS Defendants from violating the terms of the Dealer Agreement's non-compete and non-solicitation provisions, including by:

(a) Engaging or participating in, or acquiring, managing, operating, controlling, or participating in the management of, any entity that engages in the business of the sale, resale, or distribution of any wireless telephone or wireless internet data service within a two-mile radius of CWI's former MetroPCS store locations;

(b) Selling, reselling, or distributing any wireless telephone or wireless internet data service within a two-mile radius of CWI's former MetroPCS store locations;

(c) Requesting any MetroPCS customer to curtail or cancel its business with MetroPCS; or

(d) Otherwise soliciting, diverting, or attempting to divert any MetroPCS customer from patronizing MetroPCS.

This injunction shall be immediately effective and extend until Defendants have

//

//

//

//

//

1   complied with the above restrictions for 142 days following the entry of this order.  After

2   142 days of compliance, this injunction will dissolve without further court order.

3       Dated this 4th day of November, 2015.

4

5

6   _____

7   JAMES L. ROBART
    United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 11